IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| **CHRISTA PIKE,**<br><br>Petitioner,<br><br>**vs.**<br><br>**DEBRA JOHNSON, Warden,**<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:12-cv-35<br>Judge Mattice/Lee<br>DEATH PENALTY CASE<br>Oral Argument Requested |

---

## MOTION FOR DISCOVERY

---

Petitioner, Christa Pike, moves for discovery pursuant to 28 U.S.C. §§ 1651, 2241-2254, all applicable Federal Rules of Civil Procedure, Federal Habeas Corpus Rule 6, *McCleskey v. Zant*, 499 U.S. 467 (1991), and *Bracy v. Gramley*, 520 U.S. 899 (1997). Counsel for Petitioner has conferred with counsel for Respondent but was unable to reach any agreement that the following discovery should be authorized. Petitioner therefore requires the process of this Court to secure the following discovery which is relevant to constitutional claims raised in her petition for writ of habeas corpus:

> -Records of the criminal investigation into Attorney William Talman's practice of overbilling in cases where he was appointed to represent indigent criminal defendants. These records include records from the Tennessee Bureau of Investigation, as well as files from the district attorney's offices in Davidson and Knox County, Tennessee.
>
> -Records and information from Knox County Criminal Court Judge Mary Beth Leibowitz concerning the in-chambers conference where Attorney Talman turned over the entire investigative file on potential mitigating evidence gathered by Mitigation Specialist McCoy to the prosecuting attorneys.

Petitioner Pike requires this discovery to assemble additional evidence to present at the evidentiary hearing she intends to seek in connection with her habeas petition and, if necessary, to oppose Respondent's summary judgment motion. She further seeks this evidence to aid her in demonstrating that the state court's determination of factual issues in this case was incorrect. *See* 28 U.S.C. § 2254(e)(1).

## I. Factual Background that Demonstrates the Need for Discovery in this Case.

The primary issues in this case concern the effectiveness of Petitioner Pike's trial counsel. At the time of Ms. Pike's trial, her lead counsel, William Talman, was under the cloud of potential criminal and ethical charges that resulted from his admitted practice of gross overbilling in court-appointed cases to represent indigent defendants. (R.9-19, Add.5, Doc.14, Bill Talman, PCT, Page ID # 5909-10, 5914-21). Her second chair attorney was a fairly recent law school graduate who had never handled a murder case, let alone a death penalty case. (R.9-17, Add.5, Doc.12, Julie Rice, PCT, Page ID # 5676-77, 5679). These attorneys' last-minute decision to turn over all of the evidence gathered by their mitigation specialist to the State and then present almost none of it, has raised significant questions about whether the penalty phase in this case was constitutionally adequate. See Petition for Habeas Corpus (R.19 at Page ID # 9667-75, 9680-81).

Mr. Talman's ethical charges were eventually resolved by the Tennessee Supreme Court just one day after that court affirmed Ms. Pike's conviction and death sentence on appeal. The Tennessee Supreme Court filed its opinion on October 5, 1998, and rehearing was denied on November 23, 1998. *State v. Pike*, 978 S.W.2d

904 (Tenn. 1998), *r'hrg denied*, Nov. 23, 1998. The order of enforcement against Talman was entered on November 24, 1998. The court suspended Talman's license to practice law for eleven months, twenty-nine days, but stayed that suspension. (R.12-3, Add.6, Doc.8, Supp. PC Exh. 2A, BPR Report-Order of Enforcement, Page ID # 8487-88). Thus, the Tennessee Supreme Court was aware of Talman's misconduct as well as the details of his conditional guilty plea before the Board of Professional Responsibility (hereinafter "BPR"). Yet, it ultimately presided over all of the state court proceedings in Ms. Pike's case, including factual findings about whether the charges against Talman could have affected his decisions in representing Ms. Pike. Because the court itself was a party to proceedings that affected the outcome of the state court litigation, its findings of fact are inherently suspect, the integrity of the process is called into question, and the presumption of correctness can be rebutted.

In the same way, the trial court in this case was also a party to disputed proceedings from which it issued findings of fact. During the post-conviction process, Ms. Pike alleged: (1) that the trial court was aware of a potential conflict and failed to take the necessary remedial measures; (2) that trial counsel's conflict of interest adversely affected his representation of Ms. Pike in violation of her rights under *Cuyler v. Sullivan*, 446 U.S. 335 (1980); and, (3) that the appointment of conflicted counsel created structural error. See Habeas Petition, Grounds One, Two and Six (R.19, Page ID # 9666-90, 9703-04). The trial court was a necessary witness to these claims, and indeed, did ultimately "testify" on these issues.

With regard to the first and sixth claims, Ms. Pike was required to submit proof that the trial court knew or should have known of trial counsel's potential conflict.

Indeed, though the post-conviction court quashed its own subpoena, it nonetheless provided critical "testimony" on this issue in the course of ruling on Ms. Pike's motion to recuse, stating, "[i]n this case I think it's pretty obvious that everyone in Knox County knew that [lead counsel] had problems with his billing. . . . As it turned out he was never prosecuted in this case . . . ." (R.10-7, Add.5, Doc.27, PC Motions Hrg., Page ID # 7082). In its order denying post-conviction relief, the court further recalled "having inquired of [lead counsel] Talman the status of the issue [of his overbilling] prior to his appointment." (R.9-5, Add.4, Doc.5, PC Tech. Rec., FFCL, Page ID # 4435).

Although the Tennessee Bureau of Investigation (hereinafter "TBI") conducted a criminal investigation into the matter of Talman's billing, no charges were ever brought against him. Talman testified that he believed he was safe from prosecution by the time he was appointed to represent Petitioner Pike. (R.9-19, Add.5, Doc.14, Bill Talman, PCT, Page ID # 5917). However at the time of Pike's trial, the Statute of Limitations had not run. Tenn. Code. Ann. § 40-2-101(b)(2). The records provided to Petitioner during post-conviction fail to show when the decision not to prosecute Talman was made. Furthermore, nothing in the record shows that the State could not decide to pursue criminal charges at any point prior to the expiration of the Statute of Limitations.

In addition, the State of Tennessee has never made clear who ultimately decided against criminal prosecution in Talman's case. At one point during the investigation, the Office of the Attorney General for Davidson County sent the case to the Office of the Attorney General for Knox County to decide whether they had a conflict or could prosecute the case. (R.11-2, Add.6, Doc.2, PC Exh.1, Report About Over-Billing, Page

ID # 7257). The Knox County Attorney General's office was the very same agency that was seeking the death penalty against Petitioner Pike.

While all of this was going on, Talman was appointed to represent Christa Pike and ultimately did represent her in her capital trial. At no point during the process did the trial court inform Pike of Talman's misconduct, nor of the potential charges he was facing. The trial court never secured any kind of knowing and intelligent waiver from her. This, despite the fact that according to the trial court, "everyone in Knox County knew that [lead counsel] had problems with his billing." (R.10-7, Add.5, Doc.27, PC Motions Hrg., Page ID # 7082). The trial court never bothered to inform Pike about what "everyone knew." And, while "everyone knew" Talman was having problems, the agencies in charge of prosecuting him had never made clear their intentions and the Statute of Limitations had not run. Contrary to his testimony, Talman was still in danger and that danger could have come from the same prosecutors that were seeking the death penalty for his client.

The factual basis for Ground Two of Pike's Petition, in which she argues that trial counsel's conflict adversely affected his representation of her, requires the testimony from the state trial judge, Mary Beth Leibowitz. Ms. Pike's claim of adverse effect centers on the disputed facts of an off-record, *in camera* hearing in the trial court's chambers.

Attorney Talman was appointed lead counsel in Ms. Pike's case on May 25, 1995. (R.9-19, Add.5, Doc.14, Bill Talman, PCT, Page ID # 5915). He brought on Dr. Diana McCoy to serve as mitigation specialist several months later. (*Id.* at 5935). For the penalty phase, Mr. Talman recalled that, "our plan was to try and have Dr. McCoy

bring all this stuff in, you know, about [Ms. Pike's] background and tie it in with Dr. Engum's report." (R.9-20, Add.5, Doc.15, Bill Talman, PCT, Page ID # 5987). Dr. McCoy spent six months interviewing Ms. Pike, her family, and friends, and assembling three volumes of notes ("Mitigation Materials") and a 60-page summation ("Social History"). Up through the day the jury returned a guilty verdict and the penalty phase was set to begin, trial counsel's defense plan was that she alone would testify in mitigation. No other witnesses were slated. (*Id.* at 5995-96, 6009).

On that Friday afternoon, the trial court called a meeting *in camera* to discuss the parties' plans for the penalty phase. The *in camera* proceedings, which immediately followed the jury's verdict of guilt, were not transcribed, and on post-conviction, no party to the meeting could recall precisely what transpired there. (R.10-7, Add.5, Doc.27, Judge Leibowitz, PC Motions Hrg., Page ID # 7087-89). The only fact generally agreed upon is that defense counsel handed over the entirety of Dr. McCoy's Mitigation Materials and Social History to the prosecutor. (R.8-10, Add.2, Doc.25, Bill Crabtree, TT, Page ID # 3030). Prior to this meeting, counsel had not disclosed any report from Dr. McCoy.[1] Immediately after the *in camera* meeting, the parties returned to the courtroom where, on the record, the trial court recessed the penalty phase until the following morning to allow the State time to review Dr. McCoy's materials. (*Id.*, Judge Leibowitz, TT, Page ID # 3031; R.10-7, Add.5, Doc.27, Judge Leibowitz, PCT, Page ID # 7089).

---

[1] *See* Tenn. R. Crim. Pro. 16(b), Disclosure of Evidence by the Defendant and Tenn. R. Crim. Pro. 26.2, Production of Statements of Witnesses.

The next morning, defense counsel presented its mitigation proof. Dr. McCoy was not called to testify. Instead, with no witnesses under subpoena for the sentencing phase, counsel called the members of Ms. Pike's family who happened to be present: Ms. Pike's mother, father, and aunt. (R.8-10, Add.2, Doc.25, Carrie Ross, TT, Page ID # 3048-65; R.8-11, Add.2, Doc.26, Carrie Ross, Glenn Pike & Carissa Hansen, TT, Page ID # 3069-3111). These witnesses were asked to testify just before the proceedings began, and their testimony was unprepared. (R.9-6, Add.5, Doc.1, Carissa Hansen, PCT, Page ID # 4563-64, 4569-70; R.9-7, Add.5, Doc.2, Carrie Ross, PCT, Page ID # 4682-84; R.9-10, Add.5, Doc.5, Glenn Pike, PCT, Page ID # 4961-62; R.9-25, Add.5, Doc.20, Dr. McCoy, PCT, Page ID # 6415-16). On cross-examination, the State made use of Dr. McCoy's Mitigation Materials to impeach these witnesses and sully Ms. Pike's image. In this manner, Ms. Pike's planned mitigation case unraveled: the information gathered by her mitigation specialist was presented by the State, and in the worst possible light.

Although the record is not clear that the trial court ordered disclosure of the materials during the *in camera* hearing,[2] it is clear that trial counsel had an absolute duty to make sure that the record reflected the issuance of any such order and that it also reflected an objection from counsel. Furthermore, counsel had a duty to insure that what was turned over did not constitute privileged attorney work product. There is

---

[2]On post-conviction appeal, the Court of Criminal Appeals found that "the record still <u>seems to indicate</u> that the court, during the in-camera hearing, did, in fact, order production." *Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207, at *55 (Tenn. Crim. App. April 25, 2011) (emphasis added). This tentative statement by the appellate court demonstrates that what happened at the hearing has never been conclusively established.

no legitimate reason that counsel would not try to limit disclosure to only those materials that were properly discoverable, which would not include the attorney work product information contained in all of the interviews. Counsel also had a duty to understand disclosure rules and that directing an expert not to prepare a report or to express an opinion and purposely trying to skirt the rules would result in adverse consequences. Counsel must have known that by not turning over discoverable materials in a timely fashion he ran the risk of incurring sanctions. However, even if counsel had been dilatory in providing discovery, his fear of sanctions should not override his duty to protect his client's interests. This is true even where counsel knows that he stands to be severely punished for his earlier ethical lapses.

The facts of the *in camera* meeting were essential to determining Ms. Pike's claim of attorney conflict of interest. Because the *in camera* meeting was unrecorded, and because the trial court was one of only three parties to that meeting, Ms. Pike attempted to examine the trial court on its recollection of the facts in dispute during post-conviction. As it turned out, Ms. Pike was denied that opportunity, but the court nonetheless expressed its recollection for the record as follows:

> I have no independent memory [of the unrecorded in camera meeting] other than that there was three volumes. I remember that there were volumes--and I'm not trying to testify; I'm just trying to--trying to make a ruling here--of mitigation materials. Those were turned over to the State as required after the verdict.
>
> The State had no--not enough time. And then--and I can't imagine why--why there would even be an issue about when Mr. Talman received those materials because they didn't go to the State anyway at that point. And maybe the State was arguing that they were entitled and I ordered them turned over.

. . .

> Again, for the purposes of your Motion for a Subpoena, a judge speaks through their rulings. So you can take those rulings and say, "Okay. These are the grounds for post-conviction petition." But you can't subpoena me to ask me what I thought or what I think or what I remember. I've told you as much as I can in order to make this case go forward.
>
> I remember that evening. I remember that verdict coming in. I remember us having a discussion, and I remember us discussing whether--when the State got its materials. And everything is spoken for through the transcript, I think. And if there isn't--and if there's anything else we're going to get it out of those transcripts that we have.

(R.10-7, Add.5, Doc.27, PC Motions Hrg., Judge Leibowitz, Page ID # 7087-89). Ms. Pike was deprived of the opportunity to cross-examine the trial court on its recollection of both the circumstances of lead counsel's potential conflict pretrial and the events of the *in camera* meeting.

The state trial court never conclusively resolved the issue of what actually occurred during the *in camera* meeting. Although the court stated that it spoke "through [its] rulings," no ruling was ever recorded. (*Id.*). The basis of whatever ruling was made was also never recorded. Despite the need to make a thorough record in a capital case, what happened at that hearing remains a mystery.

At a motions hearing, Judge Leibowitz indicated that she kept a personal record of the proceedings in her courtroom, "[t]hese two little brown files here are my personal files of Miss Pike's trial, and all of these are of the post-conviction matters." (R.10-6, Add.5, Doc.26, PC Motion Hrg., Judge Leibowitz, Page ID # 6976). That "personal" record will shed light into what took place in her chambers once the jury had rendered its guilty verdict.

## II. Petitioner Pike Seeks the Following Limited Discovery.

Although it appears that post-conviction counsel was able to obtain the records from the Board of Professional Responsibility and Attorney Talman testified about his knowledge of the case, much remains unclear about what happened to the potential criminal prosecution for his over-billing. The State has never disclosed who made the decision not to prosecute Talman criminally, or when that decision was made. That information is highly relevant to Talman's testimony that the pending charges could have had no influence on his conduct during the Pike trial because he believed he was beyond danger of criminal charges. In particular, it is essential for this Court to know whether the State of Tennessee was still considering bringing charges against Talman or whether a final decision had been postponed and whether new evidence of misconduct could possibly influence that decision. In order to address those questions, Petitioner seeks:

1) Tennessee Bureau of Investigation records of the criminal investigation of William Talman for his practice of over-billing of the Indigent Defense Fund for the State of Tennessee. These were requested by post-conviction counsel and that request was denied.

2) Files from the Davidson County Prosecutor's Office as well as the Knox County Prosecutor's office as well as potential depositions of attorneys who made decisions on the Talman matter. A review of the records that were obtained from Davidson County indicates that the issue was last sent to Randy Nichols in Knox County. (R.11-2, Add.6, Doc.2, PC Exh. 1, Report About Over-Billing, Page ID # 7257-58, 7262). There is some indication that the case was then sent back to Davidson County. However, the ultimate resolution of the matter is still unknown.

3) Knox County Criminal Court Judge Leibowitz's internal records of the proceedings in the Pike case to try to determine exactly what happened at the in-chambers conference that immediately followed the guilty verdict in this case. No record was made of the crucial conference where defense counsel may have been ordered to turn over their entire investigative file

> on potential mitigating evidence gathered by Dr. McCoy. Post-conviction counsel attempted to subpoena Judge Leibowitz who quashed that subpoena. (R.10-7, Add.5, Doc.27, PC Motions Hrg., Page ID # 7076). The judge gave an unsworn statement from the bench about the conference, but was never put under oath and subjected to questioning. Furthermore, she never made clear factual findings about what happened in that conference. A deposition of Judge Leibowitz about that conference would also shed light on that subject.

Once counsel for Petitioner has the opportunity to review this evidence, further discovery may be required. Petitioner may later petition the court to conduct depositions of agents. However, at the present time, the discovery sought is limited until Petitioner knows whether the above-cited evidence would lead to the need of further discovery.

## III. Petitioner Pike has shown good cause so that this Court may grant discovery.

The law gives this Court the authority to order discovery in this case and, given the facts of this case, denial of the discovery would be an abuse of discretion and reversible error. *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (a federal habeas petitioner is "'entitled to careful consideration and plenary processing of [his claims], including full opportunity for presentation of the relevant facts'" (citing *Harris*, 394 U.S. at 298)); *Coleman v. Zant*, 708 F.2d 541 (11th Cir. 1983).

Petitioner Pike has alleged several constitutional violations which would establish she is entitled to relief. In Grounds One and Two of her habeas petition, she alleges that her trial counsel was constitutionally ineffective during her trial and that counsel's ineffectiveness is due, at least in part, to a conflict of interest. (R.19, habeas petition,

Page ID # 9666-90). In Ground Six, she alleges that the appointment of conflicted counsel constituted structural error. (*Id.* at 9703-04). Through this discovery, she seeks to show that counsel's performance fell below accepted standards when they turned over their entire mitigation investigation file and then abandoned their plans to use their mitigation specialist. Furthermore, she has good cause to discover evidence that would show the Tennessee courts' bias in arriving at factual conclusions during the post-conviction process. The above-cited evidence will be used to rebut findings of fact made by the state courts after they shut down inquiry into crucial information.

The Court has both the authority and the duty to permit the requested discovery. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court expressly permits the Court to authorize discovery:

> A party shall be entitled to invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

The standard for granting discovery "is not a demanding one." *United States ex rel. Pecoraro v. Page,* No. 97 C 5361, 1998 WL 708856 (N.D. Ill. Sept. 30, 1998) (citing *Gaitain-Campanioni v. Thornburgh*, 777 F.Supp. 1355, 1356 (E.D. Tex. 1991) ("The court should not hesitate to allow [habeas] discovery where it will help illuminate the issues underlying the applicant's claim.")). A habeas corpus petitioner establishes "good cause" for discovery if he makes credible allegations of a constitutional violation and the requested discovery will enable the petitioner to investigate and prove his claims. *Bracy v. Gramley*, 520 U.S. 899 (1997).

In *Bracy*, the Supreme Court held that a habeas petitioner had shown good cause for discovery by alleging that the judge who presided over his death-penalty case may not have been impartial and by showing a pattern of corruption on the part of the judge and Bracy's defense attorney. *Id.* at 909. The Court found good cause even while it recognized that Bracy may not find any evidence to back up his allegations. *Id.* The Court recognized that Bracy had made specific allegations of judicial bias and had supported that allegation with evidence about the judge's corruption in other cases. *Id*. With the integrity of the judicial process thus called into question, and even though Bracy had no evidence of actual bias in his case, the Court concluded that Bracy's allegations were specific enough to warrant discovery. *Id*.

In the same way, Petitioner Pike is entitled to the discovery requested in this case. There is no question that Attorney Talman's practice and reputation were in jeopardy at the time he represented her. Disciplinary action was pending with the BPR during the entire time he was handling her capital case. The possibility of criminal charges was real and the State of Tennessee has never disclosed who decided not to prosecute or when that decision was made. The discovery sought on this issue cannot be described as "a fishing expedition." *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (The applicable rule "does not sanction fishing expeditions based on a petitioner's conclusory allegations." (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997))). Rather, Pike has requested discovery on specific allegations and supported that request with evidence that its disclosure may well be beneficial to her case.

In the same way, Petitioner Pike's request for discovery to resolve the issue of the *in camera* hearing is specific and limited. The judge who presided over her trial and post-conviction hearing was a witness to that *in camera* hearing and never reached a factual conclusion about what took place there. Her notes as well as her deposition could well provide evidence that would allow this Court to finally resolve that factual issue. This Court could then decide whether Talman was ordered to turn over his investigation materials and what the basis for that order would have been.

The scope of discovery permitted is that "reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require.'" *Harris*, 394 U.S. at 290 (quoting 28 U.S.C. § 2243). In ordinary cases, discovery aids the fact-finding necessary for properly determining the validity of claims. In habeas corpus proceedings, especially those involving the death penalty, where there is a heightened need for reliability, discovery is crucial. For this reason, discovery requests seeking information relevant to the claims at issue should be permitted in capital habeas corpus cases unless there are extraordinary factors weighing against discovery. *See Ross v. Kemp*, 785 F.2d 1467, 1478-79 (11th Cir. 1986); *Coleman*, 708 F.2d at 545. "[M]ore liberal discovery is appropriate in capital cases where the stakes for petitioner are so high." *Payne v. Bell*, 89 F.Supp.2d 967, 971 (W.D. Tenn. 2000) (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). Finally, it must be reiterated that whether to grant a request for discovery is unrelated to whether Ms. Pike will ultimately be able to receive an evidentiary hearing before this Court. *Bracy*, 520 U.S. at 909; *Jones v. United States*, 114 F.3d 1002, 1009 (9th Cir. 1997).

As stated in her habeas petition, Petitioner Pike has made credible claims of constitutional violations. She has presented compelling proof of a denial of the effective assistance of counsel as required by the Sixth Amendment. Under these circumstances, discovery is warranted to fully develop these claims. In addition, she must be afforded a meaningful opportunity to rebut findings of fact made by the state courts. *See* 28 U.S.C. § 2254(e)(1). The integrity of the entire state process has been called into question. Furthermore, discovery may be the only way to prove eventual claims of prosecutorial misconduct including any claims that the State was holding a threat of criminal prosecution against Attorney Talman. *See Banks v. Dretke*, 540 U.S. 668, 675 (2004) (through federally ordered discovery, "long suppressed evidence came to light"); *Strickler v. Greene*, 527 U.S. 263, 278 (1999) (district court's grant of discovery of "all of the police and prosecution files in the case" led to counsel's uncovering prior inconsistent statements by key eyewitnesses that were suppressed by prosecution); *White v. Helling*, 194 F.3d 937, 943 (8th Cir. 1999) (discovery in federal habeas corpus proceeding produced "notes and memoranda from police files" that showed eyewitness had originally identified person other than petitioner and was coached by police to identify petitioner); *Coleman v. Kemp*, 778 F.2d 1487 (11th Cir. 1985) (relief granted on prejudicial pretrial claim developed through discovery ordered in *Coleman*, 708 F.2d at 547.

The discovery sought in this case is limited but necessary for a full litigation of the claims in Pike's habeas petition. Trial counsel were constitutionally ineffective in their handling of the penalty phase in this case. Information about counsel's

motivations for their actions is necessary in order to resolve Pike's claims. The state court presided over the unrecorded *in camera* hearing that led to counsel's ineffective presentation, but never provided any definitive conclusions of fact about its own rulings. The integrity of the state court process has been called into question and Petitioner Pike must be afforded the opportunity to prove her case.

## CONCLUSION

Petitioner Pike respectfully moves this Court to grant the above-requested discovery.

Respectfully submitted,

FEDERAL DEFENDERS SERVICES
OF EASTERN TENNESSEE, INC.

BY: /s/Stephen Ferrell
Stephen Ferrell
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
(865) 637-7979

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2013, the foregoing *Motion for Discovery* was filed electronically. Notice electronically mailed by the Court's electronic filing system to all parties indicated on the electronic filing receipt. Notice delivered by other means to all other parties via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ Stephen Ferrell
Stephen Ferrell