**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **CHRISTA PIKE,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **v.** | ) | Case No. 1:12-cv-35 |
| | ) | Judge Mattice/Lee |
| **VICKIE FREEMAN**, Warden, | ) | DEATH PENALTY CASE |
| | ) | |
| Respondent. | ) | |

---

**PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, AND PETITIONER'S MOTION FOR EVIDENTIARY HEARING**

---

Now comes Petitioner Christa Pike, through undersigned counsel, and in response to Respondent's Motion for Summary Judgment (R.42) and Memorandum of Law Supporting Summary Judgment (R.43), moves this Honorable Court for an evidentiary hearing on the issues that concern her trial counsel's conflict of interest (Grounds for Relief Two and Six). Furthermore, Petitioner urges this Court to deny Respondent's Motion for Summary Judgment as to her other Grounds for Relief.

In support of this Response and Motion, Petitioner hereby incorporates the Statement of Facts from her Memorandum in Support of Petitioner's Motion for Partial Summary Judgment. (R.46, PageID# 10600-635).

## I. Petitioner Pike's Response to Respondent's Motion for Summary Judgment and Memorandum of Law Supporting Summary Judgment

As a general matter, Petitioner's response to Respondent's Motion for Summary Judgment and Memorandum of Law Supporting Summary Judgment is

very limited. This is because Respondent mostly recites the applicable state court opinions, either from the Tennessee Court of Criminal Appeals or from the Tennessee Supreme Court, and then argues in conclusory fashion that each of the opinions denying relief is reasonable. Petitioner Pike has already set forth her arguments as to why those opinions are not reasonable and why judgment should be granted in her favor and will not repeat those arguments here. However, there are a few points that the record in this case that control the outcome of this case, particularly as to Ground One concerning ineffective assistance of counsel in the penalty phase.

First, there is no dispute that the penalty phase was the most important part of Christa Pike's trial. The defense never disputed her involvement in the death of Colleen Slemmer and both defense attorneys recognized that avoiding the death penalty was the chief goal of her trial. (R.9-20, Add.5, Doc.15, Talman, PCT, PageID# 5982-83; R.9-17, Add.5, Doc.12, Rice, PCT, PageID# 5688-89).

Second, there is no dispute that the defense's planned presentation for the penalty phase fell apart at the last minute. There is no contrary testimony in the record and the state court made no contrary findings. In fact, the state court characterized the defense decision not to call Dr. McCoy as an "exigent decision." *Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207, at *51 (Tenn. Crim. App. Apr. 25, 2011). The record overwhelmingly demonstrates that up until just before the penalty phase began, the defense strategy was to call only one witness, Dr. Diana McCoy.

There is also no dispute that while Dr. McCoy had conducted a mitigation investigation and had formulated a proposed strategy for mitigation, she could not offer any exert opinion because she was not asked to conduct any testing. For this reason, the state court's conclusion that counsel's performance was not deficient because of Talman's testimony that he decided not to call Dr. McCoy when she could not corroborate Dr. Engum's diagnosis of borderline personality disorder, was an unreasonable finding that is not supported by the record in this case. 28 U.S.C. § 2254(d)(2). Talman was constitutionally ineffective because he failed in his duty to use his legal expertise and know what his experts were doing and how he would present their opinions. At a minimum, he should have known that an expert who had conducted no testing could not offer an opinion as to what the test results would be. By not asking Dr. McCoy to conduct her own testing and to reach her own expert opinion, Talman created the problem that she would not be able to testify without violating the hearsay rules. *See State v. Howard*, No. E2007-00178-CCA-R3-PC, 2008 WL 1805758, at *12 (Tenn. Crim. App. Apr. 22, 2008) (expert witness may reveal the underlying factual basis of an expert opinion even if other rules of evidence prohibit its admission). Under these circumstances, the state court's finding that he was not ineffective is unreasonable.

There is also no dispute that the defense turned over the entirety of Dr. McCoy's work product to the prosecution on the afternoon before the penalty phase began. (R.9-20, Add.5, Doc.15, Talman, PCT, PageID# 6031-32). No order to do so appears in the record, and therefore the record does not reflect the legal basis for

any such order. There is also no state court decision that any such order was proper in this case because there was no objection from the defense. Additionally, there is no dispute that Dr. McCoy's materials do not express her own expert opinion, but rather contain a summary of Christa Pike's background based on interviews and records obtained by Dr. McCoy. These materials also contain Dr. McCoy's own strategic recommendations for the penalty phase. However, the materials do not contain a diagnosis reached by Dr. McCoy through her own testing because Talman did not ask her to do any testing.

Despite planning its case around her and turning over all of her work product materials, the defense did not call Dr. McCoy as a witness. Instead, three family members, who were present but unprepared, were called to present the case for life. The prosecution was able to use Dr. McCoy's investigation and materials to cross-examine these family members. Dr. Engum was not recalled during the penalty phase and his testimony was not referred to in the defense's closing argument. The entire case for life was presented in about two and a half hours.

Because of this limited presentation, the jury that sentenced Christa Pike to death never knew the following mitigating facts that had been uncovered during Dr. McCoy's investigation:

-While she was being shuffled back and forth between her parents, she changed schools so often that she was held back twice despite her high level of intelligence (R.11-3, Add.6, Doc.3, PC Exh.1A, Social History, PageID# 7508-09);

-Children's Services removed her from her mother's home after her mother's

boyfriend assaulted her (R.9-11, Add.5, Doc.6, K. Sherrill, PCT, PageID# 5107-09);

-She was beaten, sexually molested and raped as a child (R.11-3, Add.6, Doc.3, PC Exh.1A, Social History, PageID# 7481, 7490-91, 7499, 7515);

-She attempted suicide on more than one occasion (*Id.*, PageID# 7501-02);

-Her family modeled and encouraged violent behavior (*Id.*, PageID# 7477-78, 7482);

-She had been normalized to violent behavior (*Id.*, PageID# 7498).

Christa Pike's jury did know that she had spent time in a juvenile detention facility because that came out on cross-examination by the State. (R.8-11, Add.2, Doc. 26, Carissa Hansen, TT, PageID# 3106). However, the jury never knew that her parents rarely saw her there and staff at the facility believed that she sabotaged her chances for going home because she preferred staying at the facility. (R.11-3, Add.6, Doc.3, PC Exh.1A, Social History, PageID# 7503; R.9-11, Add.5, Doc.6, Peggy Hamlett, PCT, PageID# 5136-37; R.9-12, Add.5, Doc.7, Debby Burchfield, PCT, PageID# 5157). Furthermore, the jury heard almost nothing positive about Christa despite the fact that Dr. McCoy had uncovered a number of witnesses who were willing to come forward to talk about her positive aspects.

The state court's finding that "[m]uch of the evidence presented by the petitioner here was presented to the jury in one of the phases of the trial," *Pike*, 2011 WL 1544207, at *51, is unreasonable since so much mitigation evidence was left out. 28 U.S.C. § 2254(d)(2). Further, the state court's conclusion that these undisputed facts lead to a finding of constitutionally effective assistance of counsel

is an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). The state court unreasonably ignored clearly established case law finding such evidence carrying substantial weight in mitigation, particularly for a defendant who was only eighteen years old. *See Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) (youth is strong mitigating factor, particularly for youthful defendant with neglectful background). This Court must grant summary judgment in favor of Petitioner on Ground One.

As for the other Grounds for Relief, Petitioner will rely on the arguments already put forth in her Motion for Summary Judgment (R.42) and supporting memorandum (R.43).

## II. Petitioner Pike's Motion for Evidentiary Hearing on Grounds for Relief Two and Six

Petitioner moves this Court for an evidentiary hearing on her claims that trial counsel labored under a conflict of interest when he made critical decisions on the presentation of her case. (Grounds for Relief Two and Six). In support of these claims, Petitioner has alleged facts that, if proven, establish violations of her constitutional rights. Because the state courts either failed to make factual findings or their findings on the conflict of interest claims are unreasonable and are not supported by the state court record, this Court should grant an evidentiary hearing to resolve these issues.

In *Townsend v. Sain,* 372 U.S. 293 (1963), the Supreme Court noted six different bases for granting an evidentiary hearing:

> (1) the merits of the factual dispute were not resolved in [state court]; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed [in state court]; or (6) for any reason it appears that the [state court] did not afford the habeas applicant a full and fair fact hearing.

*Townsend*, 372 U.S. at 313-18. *Townsend* was overruled in part on other grounds in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992), where the Supreme Court set forth the cause and prejudice standard as the correct standard, rather than the deliberate bypass standard, for excusing a habeas petitioner's failure to develop material facts in state court proceedings. *Tomayo-Reyes* was later codified in 28 U.S.C. § 2254(e)(2) as part of the Anti-Terrorism and Effective Death Penalty Act (AEDPA). AEDPA, which was enacted after *Townsend*, does not bar an evidentiary hearing unless this Court finds a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000) (interpreting 28 U.S.C. § 2254(e)(2)).

In addition to the requirements of *Townsend*, this Court always retains the discretion to hold a hearing under Habeas Rule 8(a). That rule provides that "the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." The Supreme Court has reaffirmed this principle: "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant

such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). The review mandated by Habeas Rule 8 further supports an evidentiary hearing before this Court. *See also* 28 U.S.C. § 2246 (evidence may be taken at the court's discretion).

The Supreme Court has discussed the standard for granting an evidentiary hearing when the petitioner contends he is entitled to relief under 28 U.S.C. § 2254. *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). *Pinholster* is consistent with *Townsend* in that it contemplates a hearing where a claim was not adjudicated on the merits in state court or where § 2254(d) is satisfied. *Id.* at 1401.

Petitioner Pike will demonstrate that the facts found by the state court concerning the conflict of interest are not supported by the record and are, in fact, sometimes directly contradicted by it. The state court also failed to resolve the issue of the events of the *in camera* hearing when attorney Talman turned over Dr. McCoy's work product to the prosecution. Habeas relief is warranted because the state courts rendered "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Where Petitioner has shown by "clear and convincing evidence" that the state court's findings of fact are not supported by the record, this Court may disregard them, *see* 28 U.S.C. § 2254(e)(1). This Court should hold a hearing and grant habeas relief on these claims.

### A. This Court must engage in a close review of the record to determine if the state court factual determinations are supported by the record as a whole.

The Supreme Court has directed habeas courts to look at the record as a whole to determine if factual determinations are "unreasonable." *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Although the federal court is required to give substantial deference to state court fact-finding, such:

> deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

*Id.* at 340.

In *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Court set aside state court fact-finding on the petitioner's *Batson* claim where the record did not support the conclusions reached by the state court. The Court engaged in a very detailed and fact-specific analysis of the record to test the state court's factual conclusions. *See id.* at 240-52. Thus, while the Court accorded deference as required by the habeas statute (*id.* at 240), the Court nonetheless required support for the state court's factual conclusions before accepting them. When the Court found such support lacking, it disregarded the state's findings because they were unreasonable. *Id.* at 266. This Court must now conduct a similar analysis in Christa Pike's case which will lead it to the same conclusion: that the state court's factual findings are unreasonable because they lack support in the record.

Similarly, in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court found that state court findings would not be entitled to deference where the state courts relied on a "clear factual error." *Id.* at 528. Again, as in *Miller-El*, the Court made a painstakingly close examination of the record to determine whether the state court conclusions were supported by the evidence. *See id.* at 528-33. The *Wiggins* court determined that the state courts had relied on an assumption that was proven untrue by a close examination of the record. *Id.* at 528. It also found that portions of trial counsel's testimony relied upon by the state courts were rebutted by other portions of the record. The Court in *Wiggins* was looking at the state court's factual findings to support whether trial counsel's investigation had been a reasonable one. It concluded that counsel's testimony, accepted by the state courts, "may simply reflect a mistaken memory shaped by the passage of time." *Id.* at 533. The *Wiggins* Court looked at the record beyond counsel's testimony to determine whether the state court's decision to credit the trial attorney's testimony was supported or contradicted by other evidence in the record. Where the Court determined that the accuracy of the testimony was rebutted by other evidence in the record, it disregarded the state court's findings. This Court must do the same here.

Even in cases where the Supreme Court has found that the habeas petitioner could not satisfy the burden of 28 U.S.C. § 2254(d)(2), it has undertaken the same painstaking review of the record. This is because "[t]he prisoner bears the burden

of rebutting the state court's factual findings by 'clear and convincing evidence.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (citing 28 U.S.C. § 2254(e)(1)). In finding that the state court's factual bases were reasonable, the Court again conducted a careful probe of all the evidence presented to the state court. *See id.* at 16-18. This scrutiny is necessary because the habeas court must not limit its review to crediting factual findings that are simply "possible" but must consider whether those findings are "reasonable." *Cash v. Maxwell*, 132 S. Ct. 611, 612 (2012) (Sotomayor, J., respecting the denial of certiorari). Where the finding is not reasonable in light of all of the evidence, the habeas petitioner has met her burden under (d)(2).

In *Guidry v. Dretke*, 397 F.3d 306 (5th Cir. 2005),[1] the Fifth Circuit followed the high court's example of carefully examining the state court record and determined that the Petitioner should be allowed a federal evidentiary hearing where "gaps, inconsistencies, and conflicting testimony were not explained, or even mentioned, in the trial court's findings of fact and conclusions of law and [] these omissions reflected the trial court's failure to make crucial credibility determinations." *Id.* at 324. The *Guidry* court found that a federal evidentiary

---

[1] Since the ruling in *Guidry*, another panel of the Fifth Circuit has said, in a footnote, that *Pinholster* "abrogates" the decision in *Guidry*. *McCamey v. Epps*, 658 F.3d 491, 497 fn.1 (5th Cir. 2011). However, Guidry's analysis of the state court's findings is not inconsistent with *Pinholster's* command to consider whether the state court's ruling was reasonable in light of the evidence before it. That aspect of *Guidry* is consistent with AEDPA and *Pinholster*. Petitioner Pike advocates that this Court take a similar approach. The *Guidry* court carefully analyzed only the evidence before the state court in deciding that the state court's resolution of the factual issues was either incomplete or unreasonable. *See Guidry*, 397 F.3d at 324-28.

hearing was appropriate even though the state court had held an evidentiary hearing on the very same issue. *Id.* at 323-24. The federal court found that the state court's findings were flawed because it failed to explain why it did not credit the testimony of four lawyers whose testimony formed the basis for a constitutional claim that, if believed, might entitle the petitioner to relief. *Id.* at 324. The absence of findings about this testimony suggested to the federal court that the state court's ruling was an unreasonable determination of the facts and warranted the holding of a federal evidentiary hearing. *Id.* at 327.

If a petitioner demonstrates a constitutional violation and shows § 2254(d)(1) or (d)(2) is met or otherwise inapplicable, this Court may either grant relief or, if indicated by the *Townsend* factors, grant an evidentiary hearing. *See Pinholste*r, 131 S. Ct. at 1412 (Breyer, J., concurring in part) ("Like the Court, I believe that its understanding of 28 U.S.C. § 2254(d)(1) does not leave AEDPA's hearing section, § 2254(e), without work to do."). As Justice Breyer explained:

> [I]f the state-court rejection assumed the habeas petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground) an (e) hearing might be needed to determine whether the facts alleged were indeed true. Or if the state-court rejection rested on a state ground, which a federal habeas court found inadequate, then an (e) hearing might be needed to consider the petitioner's (now unblocked) substantive federal claim. Or if the state-court rejection rested on only one of several related federal grounds (*e.g.,* that counsel's assistance was not "inadequate"), then if the federal court found that the state court's decision in respect to the ground it decided violated (d), an (e)

> hearing might be needed to consider other related parts of the whole constitutional claim (*e.g.,* whether counsel's "inadequate" assistance was also prejudicial).

*Id*.

The Sixth Circuit follows this interpretation of *Pinholster*. In *McClellan v. Rapelje*, 703 F.3d 344 (6th Cir. 2013), the court held that because "there was no decision on the merits" in state court, "the *Cullen v. Pinholster* case does not prohibit the consideration of evidence on the merits in a later federal evidentiary hearing." *Id.* at 351. In *Plummer v. Jackson*, 491 Fed. Appx. 671, 674-75 (6th Cir. 2012), the court relied on *Pinholster* to remand for an evidentiary hearing on an ineffective assistance claim, where the state court denied petitioner the opportunity to develop his claim through discovery and a hearing. *See also Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) (same).

Other recent decisions illustrate the fact that *Pinholster* permits a hearing where the state court held a hearing but failed to make the necessary findings of fact.

- In *Moore v. Pennsylvania*, 457 Fed. Appx. 170 (3d Cir. 2012), the state court reviewed *Brady* "proffers," *id.* at 180, failed to make necessary factual conclusions, and dismissed the claim. The federal court found a hearing was warranted. Of note, the Court found it was unconstrained by *Pinholster* because the evidence was "on the state court record." *Id.* at 180, n.7.

- In *Morris v. Thaler*, 425 Fed. Appx. 415 (5th Cir. 2011), the Fifth Circuit held that the district court abused its discretion in failing to conduct an evidentiary hearing on petitioner's claim of ineffective assistance of counsel. The

court explained where the state court assumed petitioner's factual allegations were true and then denied relief in violation of § 2254(d), the federal court was required to hold a hearing to determine the veracity of the petitioner's allegations. *Id.* at 422, n.1.

- The district court in *Skipwith v. McNeil*, No. 09-60361-CIV, 2011 WL 1598829, at *4-5 (S.D. Fla. Apr. 28, 2011) took the same approach in finding that an evidentiary hearing was appropriate to determine the truth of petitioner's allegations after the court found § 2254(d)(2) was satisfied.

- *See also Hearn v. Ryan*, No. CV 08-448, 2011 WL 1526912, at *2 (D. Ariz. Apr. 21, 2011) ("What is dependent on the evidentiary hearing, therefore, is whether relief will ultimately be granted, not whether the state court acted unreasonably.").

The rule to be derived from these cases is where the federal court determines that the record has been adequately developed and a constitutional violation has been established, it may grant relief. In the alternative, where the federal court determines that the state court record leaves open questions, or does not resolve factual issues, or the state court denied the petitioner the opportunity to develop the record, it retains the discretion to order a federal evidentiary hearing to resolve the factual disputes.

### B. A close examination of the state court record demonstrates that the state court's decision to credit trial counsel's testimony is unreasonable and unworthy of any deference by this Court.

The Tennessee court's legal conclusion that Attorney William Talman's representation of Christa Pike was not affected by any conflict of interest is unreasonable because it is based on unreasonable findings of fact. The crux of

Petitioner's argument in state court was that because Attorney Talman was under the cloud of serious ethical violations and the possibility of criminal prosecution, he was conscious of the need to protect his own interests and placed those interests before his client's. The Tennessee Court of Criminal Appeals' recitation of state and federal law was correct in that it recognized that a constitutional conflict of interest may be present where an attorney puts his personal interests ahead of those of his client. *Pike*, 2011 WL 1544207, at *46 (citing *McCullough v. State*, 144 S.W.3d 382, 385 (Tenn. Crim. App. 2003). The state court correctly recognized that prejudice is presumed only if the petitioner demonstrates that counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Pike,* 2011 WL 1544207, at *46 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). However, its acceptance of the trial court's determination to credit Talman's testimony was unreasonable. The court found no conflict of interest based on Talman's testimony. Because the record demonstrates that this conclusion was unreasonable, this Court must re-examine that question.

In finding Talman's testimony to be credible, the state court completely ignored his proven record for dishonesty. Talman pleaded guilty to charges from the Board of Professional Responsibility that he had over billed the Indigent Defense Fund for more than $60,000. (R.12-3, Add.6, Doc.8, PC Exh.2A, BPR Records, PageID# 8471). These charges involved instances where Talman had billed the Fund for more than 24 hours in one day. (R.9-19, Add.5, Doc.14, Talman, PCT, PageID# 5911; R.12-3, Add.6, Doc.8, PC Exh.1, Comptroller's Rpt., PageID#

8451). Because of this dishonesty, he was eventually suspended from the practice of law for eleven months and 29 days. (R.12-3, Add.6, Doc.8, PC Exh.2A, BPR Records, PageID# 8515; *id.*, PageID# 8487). Nonetheless, at the time he gave his post-conviction testimony, he showed a tendency to minimize the seriousness of his own misconduct: "There was [sic] some questions and ambiguities in that rule." (R.9-21, Add.5, Doc.16, Talman, PCT, PageID# 6118).

The state court never explained its decision to credit the testimony of this witness with such a history of dishonesty. Nor was there any account taken of Talman's own interest in not being found to be an ineffective attorney. The state court unreasonably ignored these reasons to doubt his credibility.

Furthermore, the Court of Criminal Appeals downplayed the significance of the cloud of ethical charges that were hanging over Talman's head at the time of Pike's trial. That court unreasonably found that "[a]ll of the evidence presented appears to support lead counsel's own testimony that the investigation was concluded and the matter settled prior to his appointment in this case." *Pike*, 2011 WL 1544207, at *47. This finding is simply wrong. The record is unambiguous that the matter was pending before the Board of Professional Responsibility and that, at the very least, Talman's ability to practice law was in serious jeopardy.[2] Indeed, the very day after Pike's conviction and sentence became final, Talman's law license

[2]Although Talman testified that the matter of a possible criminal charge was also concluded (R.9-21, Add.5, Doc.16, Talman, PCT, PageID# 6123-24), the statute of limitations for such charges had not run and prosecution from his adversary in the Pike case was still technically a possibility.

was suspended. *State v. Pike*, 978 S.W.2d 904 (Tenn. 1998), *r'hg denied*, Nov. 23, 1998.[3] The state court unreasonably found that the matter was "concluded" even though there is no ambiguity that those charges were hanging over Talman's head during the entire time that he represented Christa Pike in her capital case. The only evidence that points to the matter's conclusion is Talman's own self-serving testimony.

Even if Talman "considered the matter concluded," (R.9-21, Add.5, Doc.16, Talman, PCT, PageID# 6118), the evidence in the record shows that it was not. The state court's factual conclusion is therefore rebutted by the record. Only after Pike's case was over, was Talman finally suspended from the practice of law for almost a year, as a penalty for his dishonest conduct. Even though the enforcement of the suspension was suspended, this was a harsh punishment and censure. The fact that punishment for Talman's dishonest billing had yet to be fixed and that he potentially faced losing his ability to exercise his profession could not have been an insignificant worry for him. The state courts' failure to consider this in determining that the matter was settled and in assessing Talman's credibility was unreasonable.

Talman's tendency to practice very close to ethical limits was also apparent during Petitioner Pike's trial. Talman presented the testimony of Dr. Bernet as an expert witness during the guilt phase of the trial. (R.8-8, Add.2, Doc.23, Dr. Bernet,

---

[3]The Order of Enforcement in *In re: William C. Talman*, No. 98-1037-2-SG, was entered on November 24, 1998. (R.12-3, Add.6, Doc.8, PC Exh.2A, BPR Records, PageID# 8487).

TT, PageID# 2827). Rather than adhere to the rules of discovery and turn over a report of his expert's opinions to the prosecution as required by Tennessee Rule of Criminal Procedure 16, Talman instructed his expert that there was no need to prepare a report. (R.8-9, Add.2, Doc.24, Dr. Bernet, TT, PageID# 2882). This angered the prosecution and led to numerous disruptions during Dr. Bernet's testimony while the prosecution tried to figure out the basis of Dr. Bernet's opinion. Eventually, this caused the court to order that all of Dr. Bernet's notes and materials be turned over to the prosecution for review. (*Id.*, TT, PageID# 2890-91). Again, the state court inexplicably chose to credit testimony from Talman, whose lack of honesty was a problem during Pike's trial.

The fact that Talman had already gotten into trouble for disregarding the discovery rules had to affect the decisions he made when he was, once again, confronted by a prosecutor who was angry at not having the report of the expert witness he planned to present in the penalty phase in this case. (R.9-20, Add.5, Doc.15, Talman, PCT, Page ID # 6032). He was also faced with the prosecutor's assessment that all of Dr. McCoy's proposed testimony was hearsay. (R.9-25, Add.5, Doc.20, Dr. McCoy, PCT, PageID# 6413-14). Even if the Tennessee courts discounted Dr. McCoy's testimony that he asked her to lie for him, Talman would still have a motivation to cover up his own incompetent and dishonest handling of Dr. McCoy's role in the mitigation case. The state courts unreasonably failed to consider this strong motivating factor.

The state court also failed to offer any explanation for its decision to discount

Dr. McCoy's testimony. The record discloses no apparent motivation for her to testify falsely and, contrary to Talman, she had no reputation of ethical problems. (R.10-4, Add.5, Doc.24, Greg Isaacs, PCT, PageID# 6743-44).

The state court failed to resolve the issue of what took place during the *in camera* hearing. It is undisputed that counsel turned over copies of all of the materials gathered by their mitigation specialist, Dr. Diana McCoy. (R.9-20, Add.5, Doc.15, Talman, PCT, PageID# 6031-32). However, it is unclear whether the trial court issued an order, or what its reasoning was and whether there was any objection. Unfortunately as the state court recognized, "[e]ach witness who was present at the *in camera* hearing testified that they were unable to recall what occurred in that meeting." *Pike*, 2011 WL 1544207, at *47. A hearing in federal court could resolve this important factual issue.

Although the state court found that "[t]he record simply fails to offer anything more than supposition that the overbilling issue affected lead counsel's representation of the Petitioner[,]" *id.*, there is much more than mere supposition and speculation. Talman's reputation had been publicly sullied and he did not yet know the outcome of the pending ethical charges against him. He had been playing fast and loose with the rules of discovery and had incited the anger of the prosecuting attorney. He had turned over the work product of his mitigation expert even though he had never asked her to reach any expert conclusions. He would have to deal with a serious hearsay problem if he followed through with his plans and presented Dr. McCoy as his only mitigation witness. Faced with these

problems, the easiest thing for him to do to avoid more trouble was to not call Dr. McCoy. Therefore, he did not.

Because the state court's findings of other explanations for Talman's complete change of plans are implausible, the record demonstrates Talman's incompetency. His fear of negative information from Dr. McCoy's materials took on much less significance once he had turned over all of her work product to the State. Even after he learned of her former involvement with General Crabtree, he did not raise that issue with Crabtree or with the court. (R.9-20, Add.5, Doc.15, Talman, PCT, PageID# 6010-11, 6013-14). Dr. McCoy could not testify about Dr. Engum's diagnosis because Talman had not asked her to form an opinion. This may have been the result of "a miscommunication" as found by the trial court, but it would have been the type of miscommunication that competent counsel would have clarified long before he asked his expert to testify.

Also pertinent to this claim is the fact that Talman obtained a release from his client so that he could retell her story and profit from it (Ground Two B). The state court recognized that "[g]enerally, an agreement by which a lawyer acquires literary or media rights concerning the *conduct of the representation* creates a conflict of interest between the attorney and the client." *Pike*, 2011 WL 1544207, at *48 (emphasis in original) (citing Tenn. Sup. Ct. R. 8, RPC 1.8(d)). The court further recognized that this conflict of interest continued during the direct appeal. *Id.* at *49. While the state court found that Petitioner could not show that this affected Talman's representation, it completely ignored the fact that Talman was

again skirting the bounds of proper representation and that this must affect any assessment of his credibility.

Petitioner Pike's allegations of conflict of interest are based on more than mere speculation or supposition. The facts established in the state court record all point in the same direction: Attorney Talman was in a precarious position, and he placed his own interests above those of his client. That conflict of interest affected his decision-making when he made drastic last-minute changes to his penalty phase strategy. He abandoned much of his case in order to protect himself. Because of this, the state court's decision to credit his testimony is unreasonable.

Petitioner Pike has satisfied two of *Townsend's* provisions for holding a federal evidentiary hearing: (1) the state court failed to resolve the factual dispute of what happened during the *in camera* hearing where Talman turned over Dr. McCoy's materials; and (2) the state factual determinations are not fairly supported by the record as a whole. For these reasons, Petitioner Pike requests an evidentiary hearing on this issue.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: /s/Stephen A. Ferrell
Stephen A. Ferrell
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
(865) 637-7979

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2014, notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/Stephen A. Ferrell
Stephen A. Ferrell