**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **CHRISTA PIKE,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **v.** | ) | Case No. 1:12-cv-35 |
| | ) | Judge Mattice/Lee |
| **VICKIE FREEMAN**, Warden, | ) | DEATH PENALTY CASE |
| | ) | |
| Respondent. | ) | |

# PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Now comes Petitioner Christa Pike, through undersigned counsel, and in Reply to Respondent's Opposition to Petitioner's Motion for Summary Judgment (R.50) urges this Court to grant her Motion for Partial Summary Judgment (R.45) because Respondent's opposition misreads the law and this record in a number of important respects.

## I. Petitioner Pike's death sentence was not a foregone conclusion. Despite the evidence presented in support of aggravating factors, a wealth of compelling mitigating evidence was available and Petitioner Pike's jury should have been able to consider it.

Respondent's first argument states that the facts of the crime in this case were so horrific that the death penalty was virtually automatic and that no amount of mitigation could have made any difference. This argument stands in direct contradiction of clearly established caselaw from the United States Supreme Court. The Court has held that mandatory death sentences without consideration of

individual circumstances violate the Eighth and Fourteenth Amendments to the Constitution. *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), *Sumner v. Shuman*, 483 U.S. 66, 85 (1987). In *Woodson*, the Court determined that:

> A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.

*Id.* at 304. The Court reiterated this point in *Sumner*, holding that even where an offender committed a murder while serving a life sentence without possibility of parole, the death penalty could not be automatic and that the sentencer "must be permitted to consider *as a 'mitigating factor*, any aspect of a defendant's character or record. . . .'" *Id*. at 76 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis in original).

Respondent's argument flies in the face of *Woodson*, *Sumner*, *Lockett* and other decisions mandating individualized sentencing, where the sentencer must consider not only the nature and circumstances of the offense, but also the individual characteristics of the offender. Respondent's treatment of the mitigating evidence that could have been presented runs afoul of the constitution because, under Respondent's theory, none of it mattered. Respondent also unreasonably ignores Supreme Court decisions that have found relevant mitigating factors

similar to Petitioner Pike's to be compelling against strong aggravation. *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) (Youth and evidence of a difficult family history of emotional disturbance must be considered as mitigating evidence); *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000) (evidence of abuse and neglect along with positive character evidence from a respected professional who knew the defendant[1] established prejudice); *Wiggins v. Smith*, 539 U.S. 510, 534-37 (2003) (evidence of childhood abuse and sexual molestation described as "powerful" despite the fact that the defendant was referred to as a "liar" in psychological reports); *Rompilla v. Beard*, 545 U.S. 374, 391-92 (2005) (alcoholic, abusive and neglectful parents with mother drinking during pregnancy causing brain damage); *Porter v. McCollum*, 558 U.S. 30, 40-41 (2009) (childhood abuse and brain abnormality); *Sears v. Upton*, 561 U.S. 945, __, 130 S.Ct. 3259, 3262 (2010) (parental abuse, sexual abuse, organic brain damage, personality disorder).

Counsel's constitutional duty to investigate and present mitigation evidence exists regardless of whether the prosecution's case in aggravation is perceived as "horrific," because there is no automatic death penalty in this country. Christa Pike had a constitutional right to have her individual mitigating evidence considered by the jury that decided whether she would live or die. In light of her youth, her mental illness, the neglect and abuse she suffered as a child, her chaotic and tragic childhood, and the redeeming qualities she still exhibited, the death penalty in this

[1]Similarly, Attorney Matthew Martin could have testified on Petitioner Pike's behalf.

case would have been far from automatic. Abundant evidence of these mitigating factors was available and counsel's failure to present them to the jury for constitutionally-mandated consideration was prejudicial. This Court must reject, just as the Supreme Court has rejected, Respondent's premise that the death penalty in this, or any, case was automatic.

## II. This Court may grant habeas relief in this case where there is no reasonable argument that trial counsel's performance met constitutional standards and where compelling unpresented mitigation demonstrates prejudice.

Despite the deferential nature of this Court's habeas review of the state court's conclusions, there is no reasonable argument that defense counsel satisfied *Strickland*'s requirement of competent performance. Respondent does not even attempt to dispute that trial counsel's pre-trial strategy to rely solely on Dr. McCoy for mitigation testimony could not have been implemented since she had done no testing. Therefore, counsel's "last-minute change of plans" was not based on a "considered strategic decision," but was rather damage control when the inevitable problems resulting from counsel's incompetence began to arise. Damage control cannot be constitutionally adequate performance where the problems were caused by counsel's lack of knowledge and lack of preparation.

Furthermore, Respondent's arguments about counsel's performance and the decisions they made are based on a mistaken reading of the record. According to Respondent: "The petitioner specifically complains to counsel's failure to call Dr. McCoy, who had testified during trial as to Pike's social history, to testify again at

mitigation." (R.50, Respondent's Opposition to Petitioner's Motion for Summary Judgment, PageID# 10719). The record in this case demonstrates that Dr. McCoy never testified during either phase of the trial. Although *Dr. Engum* was called to testify during the trial, he was never asked to testify about Petitioner Pike's social history and never testified that he based any of this conclusions on that history. Dr. McCoy's work was only used by the State to cross-examine and discredit the testimony of the three members of Pike's family who were present at the trial and who were called to testify during the penalty phase once counsel realized they could not call Dr. McCoy.

Finally, the state court decision quoted by Respondent is unreasonable in that it is contradictory and almost nonsensical:

> With the potential for much of this plus other information to harm the petitioner's case in mitigation, counsel made a reasonable choice to try to limit what came before the jury and from whom. Counsel's original choice to have the information explained by an expert rather than lay witnesses who could not explain the petitioner's behavior was understandable. Once the exigent decision was made that Dr. McCoy would not testify, counsel strategically decided to have the petitioner's parents and aunt testify to bring out the petitioner's life history to be considered in combination with the information that had already been provided to the jury regarding her Borderline Personality Disorder.

*Pike v. State*, 2011 WL 1544207, at *51 (Tenn. Crim. App. Apr. 25, 2011).

"Counsel's original choice" to use an expert rather than lay witnesses to testify was incompetently executed because counsel chose an expert who could not testify because she had done no testing. The "exigent decision" was necessitated by counsel's own lack of preparation and ignorance of state law. Calling unprepared

lay witnesses who "could not explain petitioner's behavior" does not become a legitimate strategy simply because counsel was left with no other choice due to their own mistakes. Also, negative evidence was not the problem where "[c]ompetent counsel should have been able to turn some of the adverse evidence into a positive . . . ." *Sears*, 561 U.S. at __, 130 S.Ct. at 3264.[2] And finally, "Borderline Personality Disorder" was never even mentioned by counsel during closing arguments. It may have been brought up in the guilt phase, but it was never associated with Pike's background,[3] and it was not given any place in counsel's argument for a sentence less than death.

The Tennessee Court of Appeals' opinion rejecting Petitioner's ineffective assistance of counsel claim in the penalty phase is simply unreasonable. The state court utterly failed to undertake the "probing and fact-specific analysis" required. *Sears*, 561 U.S. at ___, 130 S.Ct. at 3266. Any reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) demonstrates that Petitioner Pike's trial counsel's performance fell below constitutionally acceptable standards. The abundance of mitigation evidence that was available demonstrates prejudice. Under Tennessee law, it would have taken only one juror to vote against the death

---

[2]In *Sears*, the Court also pointed out the obvious, that negative information "might not have made Sears any more likable to the jury, but it might well have helped the jury understand Sears, and his horrendous acts. . . ." *Id.*

[3]As the state court pointed out, lay witnesses could not explain such concepts as Borderline Personality Disorder. Nonetheless, these are the only witnesses who presented any testimony about Pike's social history. Therefore, the origins of this disorder were never put into any context.

penalty in order to achieve a life sentence. Tenn. Code Ann. § 39-13-204(g)(1) (the jury must unanimously determine at least one statutory aggravating circumstance is proven beyond a reasonable doubt and is proven to outweigh any mitigating circumstances beyond a reasonable doubt). Because there is a reasonable probability that would have happened in this case, habeas relief is warranted.

## III. Conclusion

For the reasons stated in this Reply as well as in Petitioner's earlier pleadings, this Court must grant the writ of habeas corpus due to trial counsel's ineffectiveness during the penalty phase. As for all other Grounds for Relief, Petitioner relies on the arguments already advanced in earlier pleadings.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: /s/Stephen A. Ferrell
Stephen A. Ferrell
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
(865) 637-7979

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2014, notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/Stephen A. Ferrell
Stephen A. Ferrell